IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

KENNETH C. POWELL,                    :

    Plaintiff,                        :

v.                                    :   CIVIL ACTION 05-0016-BH-B

BRANDON CARROLL, et al.,              :

    Defendants.                       :


## REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding <u>pro</u> <u>se</u> and <u>in</u> <u>forma</u> <u>pauperis</u>, filed a Complaint under 42 U.S.C. § 1983. This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on Defendants' Motion for Summary Judgment (Doc. 25), and Plaintiff's Motion for Summary Judgment (Doc. 46). For the reasons stated below, it is recommended that Defendants' Motion for Summary Judgment be granted, that Plaintiff's Motion for Summary Judgment be denied, and that Plaintiff's action be dismissed with prejudice.

## I.  FACTS

From its review of the record, the Court summarizes the parties' allegations which are material to the issues addressed in this Report and Recommendation. According to Plaintiff, on December 5, 2004, at approximately 7:30 p.m., while incarcerated at Holman Correctional Facility ("Holman"), Plaintiff stood at the "pill call" window taking his medication when Defendant,

Correctional Officer Brandon Carroll, grabbed his shirt and "punched" him in the chest, causing him to stumble backward. (Doc. 1 at 6, Complaint).  Officer Carroll then cursed Plaintiff, calling him a " Goddam Motherfucker," and told Plaintiff to move down the hall before he "put [his] Goddam foot in [his] ass." (Id.).  The next day, Plaintiff went to the prison infirmary complaining of chest pain.  (Doc. 48 at 11, Response to Show Cause Order).  He told the nurse, "[i]t hurts when I breathe since last [night].  A dude hit me in the chest."  (Id.). Plaintiff's medical records indicate that he presented to the health care unit in "good" condition, and his physical examination revealed no discoloration or edema to the chest. (Id.).  Plaintiff's vital signs were normal, as was his EKG. (Id.; Doc. 25 at 15, Special Report).  Dr. Benjamin, the prison physician, instructed Plaintiff to continue taking his regular medications for his chronic back problems, and Plaintiff was released.  (Id.).

On December 13, 2004, Plaintiff was charged with a disciplinary violation for violating prison rule # 56, "failure to obey a direct order." (Doc. 25 at 20-21).  On December 14, 2004, Defendant, Ronald Stabler, presided as hearing officer over Plaintiff's disciplinary hearing and found Plaintiff guilty of violating prison rule #56, sentencing Plaintiff to thirty days disciplinary segregation and thirty-five days loss of phone, store, and visitation privileges.  (Doc. 1 at 7; Doc. 25 at 9,

2

21).  Defendant, Warden Grantt Culliver, approved Officer
Stabler's decision on December 20, 2004.  (Doc. 25 at 21).

    On January 7, 2005, Plaintiff filed the present § 1983 action
against Warden Grantt Culliver, Correctional Officer Brandon
Carroll, Correctional Officer Ronald Stabler, and Correctional
Officer R.V. Moore.  (Doc. 1 at 3-4).  Plaintiff claims that
Defendant Carroll violated his Eighth Amendment rights by using
excessive force; Defendant Stabler violated his Fourteenth and
Eighth Amendment rights in relation to the disciplinary hearing
proceedings and sentencing; Defendants Moore and Carroll violated
his First Amendment rights by conspiring to file disciplinary
proceedings against Plaintiff in retaliation for Plaintiff filing
a grievance against Defendant Carroll; and Defendant Culliver
violated Plaintiff's Eighth Amendment rights by failing to
properly train Defendant Carroll regarding the use of force.
(Id. at 6-8).  Plaintiff seeks compensatory and punitive damages,
as well as declaratory and injunctive relief.  (Id. at 9).

    In their Answer and Special Report filed on July 12, 2005,
Defendants deny Plaintiff's allegations and assert the defenses
of absolute and qualified immunity.[1]  (Docs. 24, 25).  Moreover,

_____

    [1] It is unclear from the Complaint whether Plaintiff is suing
Defendants in their official capacities, individual capacities,
or both.  Thus, the Court will consider both.  As state
officials, Defendants are absolutely immune from suit for damages
in their official capacities, see Harbert Int'l, Inc. v. James,
157 F.3d 1271, 1277 (11th Cir. 1998) (state officials sued in
their official capacities are protected from suit for damages
under the Eleventh Amendment).  Defendants are not immune,

3

Defendants maintain that, on December 5, 2004, Plaintiff was "holding up the line" at the "pill call" window, after having received his medication, staring at Nurse Lisa Legear. (Doc. 25 at 14-15). Officer Carroll ordered Plaintiff to move out of the line, and he refused to do so, continuing to stare at Nurse Legear. (Id.). Officer Carroll repeated his order for Plaintiff to move, telling Plaintiff to "get his ass down the hall." (Id. at 23). Plaintiff continued to refuse to move, and Officer Carroll grabbed Plaintiff's upper left arm with his right hand. (Id. at 15, 18). Plaintiff jerked his arm away, telling Officer Carroll not to put his hands on him. (Id.). Plaintiff then turned and walked down the hall to his dormitory. (Id.).

In an Order dated November 7, 2005 (Doc. 31), the parties were

---

however, from suit in their official capacities for prospective injunctive relief to end continuing violations of federal law. See Ex parte Young, 209 U.S. 123, 155-56 (1908); see also Summit Med. Assocs., P.C. v. Pryor, 180 F.3d 1326, 1336 (11th Cir. 1999).

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)). In determining whether qualified immunity is appropriate in a given case, "[t]he court must first ask the threshold question whether the facts alleged, taken in the light most favorable to the plaintiffs, show that the government official's conduct violated a constitutional right." Dalrymple, 334 F.3d at 995 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). Having found herein that Plaintiff's allegations do not establish a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201.

4

notified that Defendants' Special Report and Answer was being converted into a motion for summary judgment, and Plaintiff was given until December 9, 2005, to respond to Defendant's filing. Plaintiff did not respond to Defendant's Motion, but on August 1, 2006, Plaintiff filed a motion for summary judgment. (Doc. 46).

The undersigned has carefully reviewed the above-referenced documents, and supporting materials, and for the reasons set forth below, hereby recommends that Defendants' Motion for Summary Judgment be granted, that Plaintiff's Motion for Summary Judgment be denied, and that Plaintiff's action be dismissed with prejudice.

<u>II.  SUMMARY JUDGMENT STANDARD</u>

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles.  The <u>Federal Rules of Civil Procedure</u> grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment.  "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . .'" <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986) (quoting <u>Fed. R. Civ. P.</u> 56(c)).  The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party.  <u>Barfield v. Brierton</u>, 883 F.2d 923, 934 (11th Cir. 1989).

5

However, Rule 56(e) states that:

> an adverse party [to a motion for summary
> judgment] may not rest upon the mere
> allegations or denials of the adverse party's
> pleading, but the adverse party's response,
> by affidavits or as otherwise provided in
> this rule, must set forth specific facts
> showing that there is a genuine issue for
> trial.  If the adverse party does not so
> respond, summary judgment, if appropriate,
> shall be entered against the adverse party.

Fed. R. Civ. P. 56(e); see also Celotex Corp., 477 U.S. at 322-
23.  "[T]here is no issue for trial unless there is sufficient
evidence favoring the nonmoving party for a jury to return a
verdict for that party.  If the evidence is merely colorable or
is not significantly probative, summary judgment may be granted."
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)
(internal citations omitted).  Summary judgment will be granted
against a party who fails "to establish the existence of an
element essential to that party's case, and on which that party
will bear the burden of proof at trial."  Celotex Corp., 477 U.S.
at 322.

### III.  DISCUSSION

In this action, Plaintiff seeks redress pursuant to 42
U.S.C. § 1983 for alleged constitutional deprivations arising out
of a physical altercation between himself and Officer Brandon
Carroll that took place on December 5, 2004, at Holman prison.
Section 1983 provides in pertinent part that:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of

6

> any State or Territory or the District of
> Columbia, subjects, or causes to be
> subjected, any citizen of the United States
> or other person within the jurisdiction
> thereof to the deprivation of any rights,
> privileges, or immunities secured by the
> Constitution and laws, shall be liable to the
> party injured in an action at law, suit in
> equity, or other proper proceeding for
> redress. . . .

42 U.S.C. § 1983 (1994).  For the reasons set forth below,

Plaintiff's § 1983 claims against Defendants Carroll, Stabler,

Moore, and Culliver fail as a matter of law.

     A.   <u>Plaintiff's Eighth Amendment Excessive Force Claim
Against Defendant Carroll</u>.

The Court begins its analysis of Plaintiff's §1983 excessive

force claim against Defendant Carroll "by identifying the

specific constitutional right allegedly infringed by the

challenged application of force." <u>Graham v. Connor</u>, 490 U.S.

386, 394 (1989).  The Eighth Amendment, which attaches "after

conviction and sentence," protects incarcerated prisoners, like

Plaintiff, from punishment that is "cruel and unusual." <u>Graham</u>,

490 U.S. at 392 n.6, 394; <u>see also</u> <u>Bell v. Wolfish</u>, 441 U.S. 520,

535 n.16 (1979); <u>Ingraham v. Wright</u>, 430 U.S. 651, 671 n.40

(1977).  Specifically, the Eighth Amendment "prohibits the

unnecessary and wanton infliction of pain, . . . the infliction

of pain totally without penological justification. . . , [and]

the infliction of punishment grossly disproportionate to the

severity of the offense." <u>Ort v. White</u>, 813 F.2d 318, 321 (11th

Cir. 1987) (citing <u>Rhodes v. Chapman</u>, 452 U.S. 337, 346 (1981)).

7

In order to establish an Eighth Amendment claim against Defendant Carroll, Plaintiff must prove both an objective and subjective component.  That is, Plaintiff must show that the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation and that Defendant "act[ed] with a sufficiently culpable state of mind," *i.e.*, that he acted "maliciously and sadistically to cause harm."  Hudson v. McMillian, 503 U.S. 1, 7-8 (1992).

Considering, first, the subjective element of Plaintiff's claim, Plaintiff alleges that he was standing at the "pill call" window taking his medication when Officer Carroll approached him, grabbed his shirt, and "punched" him in the chest, causing him to stumble backward.  (Doc. 1 at 6).  According to Plaintiff, Defendant Carroll then cursed him, stating: "You Goddam Motherfucker, you better get y[our] ass down that hall before I do more than put my hands on you.  Now get down that hall before I put my Goddam foot in your ass."[2]  (Id.).  Defendant Carroll maintains that, prior to placing his hands on Plaintiff, he

---

[2] Plaintiff claims that Defendant Carroll's use of profane language and threats violated his constitutional rights under the Ninth Amendment.  (Doc. 1 at 6).  However, mere threatening language, taunts, or verbal abuse does not amount to a constitutional violation cognizable under § 1983.  See Boglin v. Weaver, 2001 WL 228172, *6, *13 (S.D. Ala. 2001) (unpublished) (citing Edwards v. Gilbert, 867 F.2d 1271, 1273 n.1 (11th Cir. 1989); McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir. 1983); and Stacey v. Ford, 554 F. Supp. 8, 9 (N.D. Ga. 1982)).  Thus, Plaintiff's Ninth Amendment claim related to Defendant Carroll's use of profane language is unavailing.

repeatedly ordered Plaintiff to move from the window because he was staring at Nurse Lisa Legear "in a stalking manner." Plaintiff refused to do so.  (Doc. 25 at 14-15, 18-20).  When Plaintiff refused to move away from the window, Officer Carroll grabbed him by the arm, and Plaintiff jerked his arm away.  (Id. at 15, 18).  Plaintiff does not dispute that he refused Defendant Carroll's order to leave the window.  Rather, his testimony at the disciplinary hearing was that the pills were caught in his throat, and he was trying to get more water.  (Id. at 20).

In Hudson, the Supreme Court recognized that, whenever guards use force to keep order, they "must balance the need 'to maintain or restore discipline' through force against the risk of injury to inmates."  Hudson, 503 U.S. at 6 (quoting Whitley v. Albers, 475 U.S. 312 (1986)).  Thus, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Id.  In making this determination, the Court considers the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived, any efforts to temper the severity of a forceful response, and the extent of injury suffered.  Hudson, 503 U.S. at 7 (citing Whitley, 475 U.S. at 321).

Officer Carroll testified that Plaintiff was standing at the

9

window of the prison Health Care Unit staring at Nurse Legear
when he ordered Plaintiff to move away from the window. (Doc. 25
at 14-15). Whatever the reason for Plaintiff's refusal to comply
with the order, Officer Carroll could have reasonably perceived
Plaintiff's refusal to move to be a threat to prison order and
discipline and could have reasonably believed it necessary to use
some measure of force to remove Plaintiff from in front of the
window. According to Plaintiff, Officer Carroll grabbed his
shirt and jacket, "punched" him in the chest causing him to
stumble backward, and then yelled at him to get down the hallway,
using profanity and threats of further force. (Doc. 1 at 6).
Assuming Plaintiff's allegations are true, a push, shove, and a
"punch" to the chest do not evince a disproportionate response to
Plaintiff's refusal to move nor a failure on the part of Officer
Carroll to temper the severity of his response. Moreover, the
nature of the altercation indicates that the force was applied in
"a good-faith effort to maintain or restore discipline," not
"maliciously and sadistically to cause harm." Hudson, 503 U.S.
at 6. Thus, Plaintiff has failed to establish the subjective
element of his Eighth Amendment claim.

Even assuming, however, that Plaintiff had established that
the push, shove, and "punch" administered by Officer Carroll were
malicious, he has failed to show that Officer Carroll's
application of force was objectively "harmful enough" to
establish a constitutional violation. Inherent in the protection

10

afforded by the Eighth Amendment is the principle that "not 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" Clark v. Johnson, 2000 WL 1568337, *12 (S.D. Ala. 2000) (unpublished) (quoting Hudson, 503 U.S. at 9-10). Indeed, "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" Hudson, 503 U.S. at 9 (citations omitted). The objective component of an Eighth Amendment excessive force claim "necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" Hudson, 503 U.S. at 9-10 (quoting Whitley, 475 U.S. at 327).

While the Supreme Court in Hudson did not define "de minimis use of force," it did hold that neither "serious" nor "significant" injury is required to satisfy the objective component of an Eighth Amendment claim, nor is any arbitrary quantum of injury an absolute requirement of an excessive force claim, apparently out of concerns that certain forms of torture are capable of inflicting extreme pain without leaving any mark or tangible injury. Id. at 9 ("Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury."). At the same time, the court suggested that the degree of injury received is relevant to determining whether more than

11

*de minimis* force was used.  See *id.*, 503 U.S. at 10 (blows causing bruising, swelling, loosened teeth and a cracked dental plate do not constitute a *de minimis* use of force).

In the present case, there are no allegations of torture designed to inflict extreme pain without leaving tangible injury or conduct that otherwise is so egregious that one could reasonably call it repugnant to the conscience of mankind. Therefore, if Plaintiff suffered only *de minimis* injuries, that would be an important factor in determining whether more than *de minimis* force was used.

According to Plaintiff, the force of the single blow to his chest caused him to stumble backward, and, the next day, he experienced chest pain for which he had to have an EKG.  (Doc. 1 at 6).  Plaintiff's medical records show that, when he was examined at the prison infirmary the day following the altercation with Officer Carroll, there were no marks, bruises, or injuries of any kind anywhere on his body.  (Doc. 48 at 11). Likewise, no abnormalities were reported from the EKG performed at that time, and Plaintiff has submitted no medical records evidencing any subsequent disability or infirmity arising from the incident.  (Id.; Doc. 25 at 15).

Even if the Court were to assume that Plaintiff suffered the injuries he claims, *i.e.*, "severe chest pain" and "soreness" from being "punched" in the chest by Officer Carroll (Doc. 1 at 6),

those injuries would not establish a constitutional violation
under the circumstances of this case.  In determining whether the
extent of Plaintiff's injuries indicates the use of excessive
force, the Court finds instructive the types of injuries which
have been held by this Court, and other courts, to be
insufficient to support excessive force claims under the Eighth
Amendment, such as: a scratch on plaintiff's side from a
correctional officer pushing, shoving, and hitting plaintiff in
an effort to force him to comply with an order to pick up his hoe
and get back to work, Walker v. Thames, 2001 WL 394911, * 6 (S.D.
Ala. 2001) (unpublished); scratches on plaintiff's elbow, bump
and one-half inch skin tear behind the ear, abrasion on the
shoulder, and jaw pain from correctional officer pushing
plaintiff into a glass window while taking him to a holding cell,
Lanier v. Fralick, 2000 WL 1844679, *1-2, 5-6 (S.D. Ala. 2000)
(unpublished); blow to the forehead with a baton, resulting in no
bruising or swelling, Clark, 2000 WL 1568337, *18-19; a sore,
bruised ear lasting three days, Siglar v. Hightower, 112 F.3d
191, 193 (5th Cir. 1997); bruises on a prisoner's back from being
shoved into a door frame, DeWalt v. Carter, 224 F.3d 607, 620
(7th Cir. 2000); lacerations, bruises, cuts, and swelling as a
result of a guard hitting plaintiff's hand with a plastic box
when plaintiff reached through a trap in the door of his cell,
White v. Matti, 58 Fed. Appx. 636, 638 (7th Cir. 2002)
(unpublished); pain, swelling, and bruising from a guard closing

13

a cuffport door on a prisoner's hand, <u>Outlaw v. Newkirk</u>, 259 F.3d 833, 839-40 (7th Cir. 2001); a bruised shoulder from being shoved into a wall, <u>Markiewicz v. Washington</u>, 175 F.3d 1020, *1 (7th Cir. 1999) (unpublished); a 1.5 inch scratch on the back of the hand from handcuffs, <u>Schoka v. Swinney</u>, 53 F.3d 340, *1 (9th Cir. 1995) (unpublished); daily headaches, not requiring treatment, from being hit with a water bucket, <u>Lunsford v. Bennett</u>, 17 F.3d 1574, 1582 (7th Cir. 1994); and a sore and swollen thumb from being hit with keys, <u>Norman v. Taylor</u>, 25 F.3d 1259, 1262-63 (4th Cir. 1994).

On the other hand, the following types of injuries have been held to be sufficient to support excessive force claims: cuts, scrapes and contusions to the face, head, and body from a group beating, <u>Gomez v. Chandler</u>, 163 F.3d 921, 924-25 (5th Cir. 1999); a broken finger, <u>Escobar v. Zavaras</u>, 149 F.3d 1190, *3 (10th Cir. 1998) (unpublished); cuts, bruises, a swollen hand and a possible broken fingers, <u>Mitchell v. Maynard</u>, 80 F.3d 1433, 1440-41 (10th Cir. 1996); and permanent scarring and numbness from handcuffs, <u>Davidson v. Flynn</u>, 32 F.3d 27, 29 n.1 (2d Cir. 1994).

Although the Court is aware that, even in the absence of serious or significant injury, a plaintiff can establish a constitutional claim based on excessive force, Defendant Carroll's actions in this case, as described by Plaintiff, do not involve diabolic or inhuman torture designed to inflict extreme pain without leaving any mark or tangible injury, nor are they

14

otherwise so egregious that one could reasonably call them
repugnant to the conscience of mankind.  Assuming, as Plaintiff
alleges, that Officer Carroll unjustifiably "punched" him once in
the chest, his injuries, if any, were *de minimis* and simply do
not support his claim that he was subjected to anything other
than *de minimis* force, which is insufficient to establish a
constitutional violation under the Eighth Amendment.  While the
Court certainly does not condone the unjustified use of force by
prison officials, Plaintiff's allegations regarding Officer
Carroll's use of force against him fall short of what is required
to state a claim for excessive force under the Eighth Amendment.

    B.   <u>Plaintiff's Fourteenth and Eighth Amendment Claims
       Against Defendant Stabler</u>.

As discussed above, on December 13, 2004, Plaintiff was
charged with a disciplinary violation for violating prison rule #
56, "failure to obey a direct order."  (Doc. 25 at 20-21).  On
December 14, 2004, Defendant Stabler presided as hearing officer
over Plaintiff's disciplinary hearing and found Plaintiff guilty
of the rule violation and sentenced Plaintiff to thirty days
disciplinary segregation and thirty-five days loss of privileges.
(Doc. 1 at 7; Doc. 25 at 9, 21).  Warden Culliver approved
Defendant Stabler's decision on December 20, 2004.  (Doc. 25 at
21).

Plaintiff claims that Defendant Stabler violated his

Fourteenth Amendment due process rights by not allowing him to call certain witnesses at the hearing and by not allowing him to ask certain questions of Defendant Carroll.  In order to assert a Fourteenth Amendment due process claim, Plaintiff must have been deprived of "life, liberty, or property."  Wolff v. McDonnell, 418 U.S. 539, 556 (1974); U.S. Const. amend. XIV, § 1 (providing, in part: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law...."). Plaintiff appears to claim a loss of liberty as a result of his confinement in disciplinary segregation for thirty days and loss of privileges for thirty-five days.  "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty'. . ., or it may arise from an expectation or interest created by state laws or policies. . . ." Wilkinson v. Austin, 545 U.S. 209, 125 S. Ct. 2384, 2393 (2005) (internal citations omitted).

> Following Wolff, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. . . .  But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Sandin v. Conner, 515 U.S. 472, 483-84 (1995).

16

In <u>Sandin</u>, the Supreme Court held that there is no right
inherent in the Constitution, nor is there a state-created
liberty interest, to be free from disciplinary segregation.
Placement in disciplinary segregation as a form of punishment is
not a "dramatic departure" from the ordinary conditions of
incarceration and does not "present the type of atypical,
significant deprivation in which a State might conceivably create
a liberty interest." <u>Id.</u>, 515 U.S. at 485-86.  Rather, mere
confinement to disciplinary segregation is a type of discipline
that should be expected by an inmate as an incident to his
criminal sentence.  <u>Id.</u> at 487.  Thus, Plaintiff has no protected
liberty interest to which the due process protections apply. <u>See</u>
<u>id.</u> at 486 (thirty days of disciplinary segregation did not
trigger due process concerns); <u>Rodgers v. Singletary</u>, 142 F.3d
1252, 1253 (11th Cir. 1998) (confinement in administrative
segregation for a period of two months was not a deprivation of a
constitutionally protected interest); <u>Johnson v. Sinkston</u>, 2006
WL 752991 (S.D. Ala. 2006) (confinement in disciplinary
segregation for a period of twenty days did not constitute a
deprivation of a liberty interest protected by due process).

In addition, this Court has held that there is no right
inherent in the Constitution entitling a prisoner to privileges:

> [B]ased on a plain reading of the
> Constitution, the Court finds that there is
> no right inherent in the Constitution
> entitling a prisoner to privileges.  <u>Accord</u>

17

> Id. [Sandin] (finding no right inherent in
> the Due Process Clause to be free from
> disciplinary segregation); Moody v. Daggett,
> 429 U.S. 78, 88 n. 9, 97 S. Ct. 274, 279 n.
> 9, 50 L. Ed.2d 236 (1976) (finding that
> eligibility for rehabilitation programs is
> not a sufficient interest to invoke due
> process); Meachum v. Fano, 427 U.S. 215, 216,
> 224-25, 96 S. Ct. 2532, 2534, 2538, 49 L. Ed.
> 2d 451 (1976) (finding the Due Process Clause
> itself does not protect a prisoner from being
> transferred to an institution with less
> favorable conditions); Wolff, 418 U.S. at
> 557, 94 S. Ct. at 2975 (finding no right in
> the Constitution to receive good-time credits
> for satisfactory behavior).

James v. Odom, 2000 WL 1136563, *3 (S.D. Ala. 2000)

(unpublished).  Because Plaintiff's allegations do not concern a

right inherent in the Constitution, he must show a state-created

liberty interest in being accorded due process before his prison

privileges can be restricted.  However, in James, this Court

further held:

> [T]he restriction of privileges is a much
> less severe form of discipline than placement
> in disciplinary segregation.  By virtue of
> being in prison, a prisoner's life is heavily
> restricted. . . .  Therefore, the increased
> restriction of privileges is neither
> "atypical" nor a "significant hardship" under
> the Sandin analysis and is a type of
> discipline that should be expected by a
> prisoner as an incident to his criminal
> sentence.

James, 2000 WL 1136563 at *5 (citations omitted) (plaintiff did

not suffer a deprivation of a state-created liberty interest

when, as a result of his disciplinary conviction, his store,

phone, and visiting privileges were restricted for forty-five days).  Thus, Plaintiff's claim that he was entitled to due process before being sentenced to thirty-five days loss of privileges is likewise unavailing.

Moreover, even if Plaintiff could establish a liberty interest in remaining free from disciplinary segregation and from the loss of privileges, the Court finds that his due process rights were fulfilled by his disciplinary hearing. The procedural requirements for a disciplinary hearing are: (1) advance written notice; (2) a written statement of the evidence relied upon and the reasons for the disciplinary action taken; and (3) the opportunity to call witnesses and present evidence, when "do[ing] so will not be unduly hazardous to institutional safety or correctional goals." _Wolff_, 418 U.S. at 563-66.  The record shows that Plaintiff was given twenty-four hours advance written notice of the hearing. (Doc. 25 at 10, 20).  Plaintiff was permitted to attend the hearing, give testimony, and present evidence. (_Id._ at 10, 20).  Plaintiff was allowed to prepare and present written questions to be asked of Defendant Carroll at the hearing. (_Id._ at 10, 22).  Plaintiff was informed of the hearing officer's decision. (_Id._ at 10).  Plaintiff was given a copy of the signed and approved disciplinary report, which listed the findings of fact, the decision of the hearing officer, the reasons for the disciplinary action taken, and the sanctions imposed. (_Id._ at 10-11, 20-21).

19

Plaintiff complains that he was not allowed to call Officer R.V. Moore and Warden Grantt Culliver as witnesses at the hearing, and he was not allowed to ask Defendant Carroll certain questions. (Doc. 1 at 8; Doc. 25 at 10, 20-21). The record shows, however, that Defendant Stabler refused to allow Plaintiff to call Officer Moore and Warden Culliver as witnesses at the disciplinary hearing because they were not present when the incident occurred; thus, he concluded, their testimony would be irrelevant. (Doc. 25 at 10). Further, while Defendant Stabler did refuse five of Plaintiff's twenty-five questions,[3] finding them irrelevant, he allowed Plaintiff to ask Defendant Carroll twenty others. (<u>Id.</u> at 10, 22-23).

"[O]rdinarily the right to present evidence is basic to a fair hearing, but the inmate's right to present witnesses [in a disciplinary hearing] is necessarily circumscribed by the penological need to provide swift discipline in individual cases." <u>Ponte v. Real</u>, 471 U.S. 491, 495 (1985). "This right is additionally circumscribed by the very real dangers in prison life which may result from violence or intimidation directed at either other inmates or staff." <u>Id.</u> In <u>Wolff</u>, the Court

---

[3] Defendant Stabler disallowed the following questions: "how long have you worked in this capacity;" "do you remember who was at the pill call window that evening;" "were you angry that Mr. Powell had filed a complaint against you;" "have you ever . . . had a complaint due to physical and/or verbal assault . . . against you while working at Holman prison;" and "did you say to Mr. Powell, 'this is a direct order.'" (Doc. 25 at 22-23).

described the right to call witnesses as subject to the "mutual
accommodation between institutional needs and objectives and the
provisions of the Constitution . . . ." <u>Wolff</u>, 418 U.S. at 556.

> Prison officials must have the necessary
> discretion to keep the hearing within
> reasonable limits and to refuse to call
> witnesses that may create a risk of reprisal
> or undermine authority, as well as to limit
> access to other inmates to collect statements
> or to compile other documentary evidence.
> Although we do not prescribe it, it would be
> useful for the [disciplinary board] to state
> its reason for refusing to call a witness,
> whether it be for irrelevance, lack of
> necessity, or the hazards presented in
> individual cases.

<u>Wolff</u>, 418 U.S. at 566.

In this action, Defendant Stabler refused, on grounds of
relevance, to allow Plaintiff to call a correctional officer and
the warden of the prison, neither of whom was a witness to the
incident.  Defendant Stabler also disallowed, as irrelevant, five
of Plaintiff's twenty-five questions to Defendant Carroll.  The
Supreme Court in <u>Ponte</u> stated that, "so long as the [hearing
officer's] reasons are logically related to preventing undue
hazards to 'institutional safety or correctional goals,' the
explanation should meet the due process requirements as outlined
in <u>Wolff</u>." <u>Ponte</u>, 471 U.S. at 497.  Given the considerable
discretion accorded prison officials in keeping the prison
disciplinary hearing "within reasonable limits," <u>Wolff</u>, 418 U.S.
at 566, and having reviewed the record of the disciplinary

proceedings, the Court finds that Plaintiff's due process rights were not violated by Defendant Stabler's refusal to allow him to call Officer Moore and Warden Culliver as witnesses or by Defendant Stabler's refusal to allow him to pose these particular questions to Officer Carroll.[4]

Plaintiff also claims that Defendant Stabler's sentence was cruel and unusual and, thus, violated his Eighth Amendment right to be free from cruel and unusual punishment.  (Doc. 1 at 7). The Eighth Amendment is violated only by "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate."  Farmer v. Brennan, 511 U.S. 825, 828 (1994). Plaintiff has alleged no facts which would support a finding that his thirty days in disciplinary segregation and/or his thirty-five days loss of privileges subjected him to a substantial risk

---

[4] Plaintiff also claims that Defendant Stabler's refusal to allow him to call Defendants Culliver and Moore as witnesses and his decision to disallow some of Plaintiff's questions to Defendant Carroll violated his Sixth Amendment right of confrontation.  However, because prison disciplinary proceedings are not criminal prosecutions within the meaning of the Sixth Amendment, prisoners do not possess a Sixth Amendment right to confront and cross-examine witnesses in a disciplinary proceeding.  See Henderson v. U.S. Parole Comm'n, 13 F.3d 1073, 1078 (7th Cir. 1994); Custard v. U.S., 2006 WL 1599210, *4 (S.D. Ill. 2006).  Rather, the question whether an inmate has been unconstitutionally denied the opportunity to present witnesses at his disciplinary hearing is properly considered by the Court as a Fourteenth Amendment procedural due process claim.  See Wolff, 418 U.S. at 566-67; Urbanski v. Horn, 1998 WL 661531, *7 (E.D. Pa. 1998) (unpublished).  Because the Sixth Amendment right to confrontation and cross-examination is inapplicable in prison disciplinary proceedings, Plaintiff's Sixth Amendment claim fails as a matter of law.

of serious harm or denied him "the minimal civilized measure of
life's necessities." Id. at 834.  Moreover, Plaintiff has
alleged no facts which would support a finding that prison
officials knew of and disregarded the purported excessive risk to
his health or safety caused by his disciplinary segregation
and/or loss of privileges.  Id. at 837.  Thus, Plaintiff's Eighth
Amendment claim related to his disciplinary segregation and loss
of privileges likewise fails as a matter of law.

    C.    <u>Plaintiff's Conspiracy and Retaliation Claims Against
Defendants Moore and Carroll</u>.

Next, Plaintiff claims that Defendant Moore conspired with
Defendant Carroll to file disciplinary proceedings against
Plaintiff in retaliation for Plaintiff filing a grievance against
Defendant Carroll.  (Doc. 1 at 7).  Plaintiff alleges that, on or
about December 6, 2004,[5] he filed a "complaint" against Defendant
Carroll for use of excessive force during "pill call" the
previous day.  (Doc. 1 at 6; Doc. 37 at 3).  Plaintiff claims
that, on or about December 6 or 7, 2004, Defendant Moore notified
Defendant Carroll of the complaint and told Carroll to file
disciplinary proceedings against Plaintiff.  (<u>Id.</u>).  The
Institutional Incident Report dated December 7, 2004, reflects
Defendant Carroll's intention to charge Plaintiff with violating
rule #56, "failure to obey a direct order."  (Doc. 25 at 18).

---

[5] Plaintiff's lone reference to 2005 as the year that these
events occurred is apparently a mistake.  (Doc. 37 at 3).

Carroll ultimately filed a formal disciplinary charge against Plaintiff on December 13, 2004.  (Id. at 20).  Plaintiff states that the timing of the filing of formal disciplinary proceedings, approximately seven days after Carroll had learned of the grievance, evidences a conspiracy between Defendants Moore and Carroll to retaliate against him for filing the complaint against Carroll.  (Doc. 37 at 4).  Defendant Carroll does not deny that he discussed these matters with Defendant Moore; he maintains, however, that he merely sought Defendant Moore's advice on the appropriate charge for Plaintiff's behavior.  (Doc. 25 at 15). Carroll denies that he filed the disciplinary charge against Plaintiff in retaliation for Plaintiff filing a complaint against him.  (Id. at 22).

"The First Amendment protects inmates from retaliation by prison officials for filing lawsuits or administrative grievances." Redd v. Conway, 2005 WL 3528932, *4 (11th Cir. 2005) (citing Wright v. Newsome, 795 F.2d 964, 968 (11th Cir. 1986); Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).  "To state a [F]irst [A]mendment claim for retaliation, a prisoner need not allege violation of a separate and distinct constitutional right." Thomas v. Evans, 880 F.2d 1235, 1242 (11th Cir. 1989).  Rather, "[t]he gist of a retaliation claim is that a prisoner is penalized for exercising the right of free speech ." Id.

"To state a retaliation claim cognizable under § 1983, a prisoner must demonstrate that (i) he engaged in a constitutionally protected activity, (ii) he suffered adverse treatment simultaneously with or subsequent to such activity, and (iii) a causal connection existed between the protected activity and the adverse action." Flynn v. Scott, 2006 WL 1236718, *5 (M.D. Ala. 2006) (citing Donnellon v. Fruehauf Corp., 794 F.2d 598, 600-01 (11th Cir. 1986); Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003)).

> An inmate has the initial burden of establishing a prima facie case of unlawful retaliation by a preponderance of the evidence, which once established raises a presumption that prison officials retaliated against the inmate. . . . Merely alleging the ultimate fact of retaliation, however, is insufficient. . . . Additionally, conclusory allegations are insufficient to demonstrate the existence of each element requisite to demonstration of a retaliation claim. . . . If an inmate establishes a prima facie case, the burden then shifts to prison officials to rebut the presumption by producing sufficient evidence to raise a genuine issue of fact as to whether the prison official retaliated against the inmate. This may be done by the prison official articulating a legitimate, non-retaliatory reason for the adverse decision or action, which is clear, reasonably specific and worthy of credence. The prison official has a burden of production, not of persuasion, and thus does not have to persuade a court that he or she actually was motivated by the reason advanced. . . . Once the prison official satisfies this burden of production, the inmate then has the burden of persuading the court by sufficient evidence that the proffered reason for the adverse decision is a pretext for retaliation.

<u>Flynn</u>, 2006 WL 1236718 at 5-6 (citations omitted).  A prisoner "must allege facts showing that the allegedly retaliatory conduct would not have occurred <u>but for</u> the retaliatory motive." <u>Hempstead v. Carter</u>, 2006 WL 2092383, *5-6 (N.D. Fla. 2006) (emphasis added) (citing <u>Jackson v. Fair</u>, 846 F.2d 811, 820 (1st Cir. 1988)).  "[A] causal connection may be alleged by a chronology of events that create a plausible inference of retaliation.  <u>Id.</u> (citing <u>Cain v. Lane</u>, 857 F.2d 1139, 1143 n. 6 (7th Cir. 1988)).  However, "[t]he relevant showing . . . must be more than the prisoner's 'personal belief that he is the victim of retaliation.'"  <u>Id.</u> (citing <u>Johnson v. Rodriquez</u>, 110 F.3d 299, 310 (5th Cir. 1997)).

"Federal courts must 'carefully scrutinize retaliation claims' which challenge the issuance of disciplinaries against prison inmates as prisoners often attempt to 'inappropriately insulate themselves from [such] actions by drawing the shield of retaliation around them.'"  <u>Flynn</u>, 2006 WL 1236718, *5 (quoting <u>Woods v. Smith</u>, 60 F.3d 1161, 1166 (5th Cir. 1995)).  "Carefully scrutinizing such claims is [necessary because prisoners'] . . . claims of retaliation are . . . easily fabricated [and] pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration."  <u>Id.</u>  "This is so because virtually any adverse action taken against a prisoner by a prison official - even those otherwise not rising to the level of a

26

constitutional violation - can be characterized [by the prisoner] as a constitutionally proscribed retaliatory act.")."  Id.

> In assessing retaliation claims, appropriate deference should be afforded to prison officials "in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995) (citing Sandin v. Conner, 515 U.S. 472, 487, 115 S. Ct. 2293, 2299, 132 L. Ed. 2d 418 (1995)).  And, because regulatory actions taken by prison officials are presumed to be reasonable, the inmate must produce "specific, nonconclusory factual allegations that establish improper motive causing cognizable injury. . . ." Crawford-El v. Britton, 523 U.S. 574, 598, 118 S. Ct. 1584, 1596-97, 140 L. Ed. 2d 750 (1998) (internal quotation marks omitted).  Indeed, while mindful that Plaintiff may not be held to a heightened burden of proof, see Crawford-El, 523 U.S. at 580-86 (holding that in retaliation claim prisoner could not be required to show "clear and convincing" evidence of defendant's unconstitutional motives), courts should approach prisoner claims of retaliation "with skepticism and particular care" due to the "near inevitability" that prisoners will take exception with the decisions and actions of prison officials and "the ease with which claims of retaliation may be fabricated."

Hempstead, 2006 WL 2092383, *6 (citations omitted).

In this case, assuming that Plaintiff has carried his initial burden of presenting prima facie proof of retaliation, Defendants have, in turn, met their burden of demonstrating that the adverse action about which Plaintiff complains resulted from his violation of an institutional rule.  The evidence shows that

Plaintiff was charged with violating prison rule #56, "failure to obey a direct order," after he refused Defendant Carroll's repeated orders to move away from the "pill call" window. (Doc. 25 at 18). In response, Plaintiff offers only his belief that Defendants' actions were retaliatory, stating that he has a "reasonable belief" that Defendant Carroll and Defendant Moore conspired to retaliate against him "due to the length of delay" in filing the disciplinary and Defendant Carroll's "admission" that Defendant Moore told him to charge Plaintiff with a disciplinary. (Doc. 37 at 1).

While the Court recognizes that, in some cases, a chronology of events will create a plausible inference of retaliation, the chronology of events here is not sufficient to create such an inference. The fact that Defendant Carroll charged Plaintiff with a disciplinary violation subsequent to Plaintiff filing a grievance against him is not, by itself, evidence of a retaliatory motive. Both the grievance and the disciplinary charge arose out of the same event, *i.e.*, the altercation during "pill call" on December 5, 2004. The timing of these two events, within seven or eight days of each other, shows only that Plaintiff managed to file his complaint concerning Defendant Carroll's behavior before Defendant Carroll filed a disciplinary charge against Plaintiff regarding his behavior. A retaliatory motive is also nonevident from Carroll's discussion with Moore, his supervisor, on December 6 or 7, 2004, about Plaintiff's

28

complaint and the disciplinary charge against Plaintiff, as these are matters that routinely would be discussed by a correctional officer and his supervisor.  Moore's advice to Carroll to charge Plaintiff with violating prison rule # 56 for his refusal to obey a direct order to move away from the "pill call" window likewise fails to indicate an improper motive.

As this court must carefully scrutinize retaliation claims arising from prison disciplinary actions and approach such claims "with skepticism and particular care," Hempstead, 2006 WL 2092383, * 6, Plaintiff's conclusory allegations are insufficient to show that the legitimate reason proffered by Defendants is pretextual.  Given the absence of any evidence that Plaintiff would not have been charged with violating rule #56 "but for" the purpose of retaliation, Plaintiff's retaliation claim fails as a matter of law. [6]

D.   Plaintiff's Eighth Amendment Claim Against Defendant Culliver.

Next, Plaintiff claims that Defendant Warden Culliver violated his Eighth Amendment rights by failing to properly train Defendant Carroll regarding the use of force.  (Doc. 1 at 8). "[S]upervisory liability under § 1983 occurs either when the

---

[6] Because Plaintiff's retaliation claim fails as a matter of law, Plaintiff's claim that Defendants Moore and Carroll "conspired" to retaliate against him likewise fails as a matter of law.

supervisor personally participates in the alleged
unconstitutional conduct or when there is a causal connection
between the actions of a supervising official and the alleged
constitutional deprivation." Cottone v. Jenne, 326 F.3d 1352,
1360 (11th Cir. 2003). "The necessary causal connection can be
established 'when a history of widespread abuse puts the
responsible supervisor on notice of the need to correct the
alleged deprivation, and he fails to do so.'" Id. (citations
omitted). "Alternatively, the causal connection may be
established when a supervisor's 'custom or policy . . . result[s]
in deliberate indifference to constitutional rights' or when
facts support 'an inference that the supervisor directed the
subordinates to act unlawfully or knew that the subordinates
would act unlawfully and failed to stop them from doing so.'" Id.
(citations and internal quotation marks omitted). Where, as
here, the claim rests on a supervisor's alleged failure to train
his employee, a plaintiff "must present some evidence that the
[defendant] knew of a need to train and/or supervise in a
particular area and the [defendant] made a deliberate choice not
to take any action[,]" that this failure to train and/or
supervise constitutes a custom or policy, and that the failure to
train and/or supervise was the "moving force" behind the
deprivation of a constitutional right. Gold v. City of Miami,
151 F.3d 1346, 1350 (11th Cir. 1998). Plaintiff has presented no
such evidence in this case. Accordingly, Plaintiff's Eighth

Amendment claim against Defendant Culliver fails as a matter of
law.

IV.  CONCLUSION

If a party "fails to make a showing sufficient to establish
the existence of an element essential to that party's case, and
on which the party will bear the burden of proof at trial," Rule
56(c) mandates that summary judgment be entered against the
nonmovant.  <u>Celotex Corp.</u>, 477 U.S. at 322.  "No material issues
can be in dispute where the plaintiff's evidence fails to
establish a constitutional violation."  <u>Bennett v. Parker</u>, 898
F.2d 1530, 1534 (11th Cir. 1990).  Therefore, since no
constitutional violation has been established, Defendants' Motion
for Summary Judgment is due to be granted.

Based on the foregoing, it is recommended that the Motion
for Summary Judgment of Defendants Grantt Culliver, Brandon
Carroll, Ronald Stabler, and R.V. Moore be granted (Doc. 25),
that Plaintiff's Motion for Summary Judgment be denied (Doc. 46),
and that Plaintiff's claims against these Defendants be dismissed
with prejudice.

The attached sheet contains important information regarding
objections to this recommendation.

DONE this **31st** day of **August 2006.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**

31

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION AND FINDINGS CONCERNING
NEED FOR TRANSCRIPT**

1.  **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(c); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.  **Transcript (applicable where proceedings tape recorded)**. Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the magistrate judge finds that the tapes and original records in this

action are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this **31st** day of **August 2006.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**